TEMPLETON, KENLY & CO., LTD., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 6145, 18432. Promulgated February 4, 1927.

1. During 1918 the petitioner abandoned the use of and scrapped certain material theretofore used in the manufacture of certain designs of Simplex jacks which became obsolete and their manufacture discontinued. *Held*, that the material scrapped was properly excluded from the closing inventory for 1918.

2. A salary of $30,000 paid by petitioner to its president in each of the years 1918 and 1919 was, in the circumstances, reasonable.

3. Petitioner's income-tax returns for 1918 and 1919 were not willfully false and fraudulent with intent to defeat and evade the tax.

*Charles H. Watson*, Esq., for the petitioner.
*Harold Allen*, Esq., for the respondent.

The Commissioner determined deficiencies in income and profits tax and imposed a 50 per cent fraud penalty, the tax and penalty for 1918 being $75,719.10 and $37,859.55, respectively, and the tax and penalty for 1919 being $5,844.10 and $2,942.05, respectively.

For 1918 the Commissioner reduced the deduction claimed by petitioner for amortization of war facilities from $26,736.03 to $3,299.58; increased the closing inventory as shown in the return from $49,291.89 to $90,265.28, and held that a salary of $30,000 authorized and paid to the president was unreasonable in amount and reduced the same to $12,000. He also held that this return was willfully false and fraudulent and added a 50 per cent penalty.

For 1919 the Commissioner reduced the amortization claim from $26,736.03 to $3,299.58, made certain adjustments in the 1919 inventory, reduced the depreciation claimed, disallowed certain items of expense, certain alleged worthless accounts, and reduced the deduction of $30,000 compensation authorized and paid to the president to $12,000 upon the ground that the amount claimed was unreasonable. He also held that the return for this year was willfully false and fraudulent and added the 50 per cent penalty. The Commissioner apparently made a jeopardy assessment of the tax and penalty for 1919 and in the notice of the deficiency denied petitioner's claim for abatement thereof.

Petitioner filed separate appeals for each year in which it claimed that the Commissioner's determinations in regard to the above-mentioned items were erroneous. The proceedings were consolidated by order of the Board upon application of the petitioner for hearing and decision.

By stipulation filed all issues have been disposed of except the following: (1) Whether the closing inventory for 1918 should be reduced from $90,265.28 to $61,192.61 on account of the value of certain obsolete jack parts alleged by petitioner to have been abandoned and discarded within the year. The Commissioner claims that the obsolete material was not abandoned and discarded until 1919 and, therefore, should not come out of the 1918 closing inventory. (2) Whether petitioner is entitled to a deduction of $30,000 for compensation of its president for each of the years 1918 and 1919.

(3) Whether the returns for the years involved were willfully false and fraudulent with intent to evade the tax.

### FINDINGS OF FACT.

Petitioner is an Illinois corporation, engaged in the manufacture of jacks for the most part of heavy type for use largely in railroad and mining industries, with principal office in Chicago. The corporation was organized as a small concern by Walter B. Templeton in 1901, since which time he has been president and in complete charge of all the corporation's business and affairs. He secured patents covering articles produced by the company. Since the beginning he has been its sole executive head, its designing engineer, and has directly supervised all of its manufacturing operations. He personally had charge of all sales.

During the taxable years Templeton owned 75 per cent of the outstanding common stock of the corporation consisting of $75,000 par value. Annual dividends of 8 per cent were paid upon the preferred stock but no dividends have ever been paid upon the common stock, the earnings of the company being at all times left in the business. Templeton's object at all times has been the company's success. In years prior to the taxable years involved Templeton and the directors gave little or no consideration to the matter of his compensation as compared with the value of his services. It was Templeton's desire that as much of the company's earnings as possible remain in the business and the amount of his salary was predicated primarily upon his personal financial requirements. The directors frequently suggested the allowance of a greater salary to him. The amount of Templeton's salary for the taxable years was in no way predicated upon the stock holdings and was decided upon and fixed at the instance of the other four directors, without any suggestion or request on his part. At the beginning of the year 1918 Templeton's salary, under prior authorization of the directors, stood at $12,000 per annum. Later in the year the directors gave further consideration to the matter of his salary from the standpoint of their opinion as to the value of the services being rendered by him and of the salaries paid for similar services by other concerns engaged in like or similar business, and, after due consideration and deliberation, the directors voted on December 21, 1918, to increase the present salary of $12,000 to $30,000, effective January 1, 1918, as disclosed by a resolution providing "That the salary of Walter B. Templeton be and is hereby increased from $12,000 to $30,000 per year, effective January 1, 1918. Carried." By resolution adopted February 15, 1919, Templeton's salary for the year 1919 was fixed at $30,000 and said resolution further provided that "the amount

)
of salary to be paid to the other officers was left to the discretion of
the president."

Templeton devoted all of his time and energy to the business and
the success of the enterprise was due primarily to his services. In
the second year of petitioner's operations another manufacturing
concern offered Templeton an annual salary of $8,000. In 1912
Templeton was offered a salary of $18,000 per annum by a com-
peting concern if he would come with that company as designing
engineer. In 1918 Templeton equipped a bedroom in the office of
the petitioner's plant and throughout that year lived in the plant
so that he could more efficiently promote the interests of the company.
This demonstrated the character of the services which he at all
times rendered to the company.

During 1918 petitioner earned approximately 75 per cent on its
common stock after the payment of the $30,000 salary to the presi-
dent and a dividend of 8 per cent upon the preferred stock of
$25,000.

During 1918 the corporation was engaged in war production. In
November of that year when this production ceased the company
found itself without a great many orders for its product. There-
upon Templeton, as he had in the past, devoted himself diligently
in connection with his other duties to the matter of obtaining orders
for the company's product from commercial enterprises, with the
result that petitioner's operations continued in the normal way, and
during the year 1919 the company earned 20 per cent on its common
stock after the payment of the salary of $30,000 and an 8 per cent
dividend upon the preferred stock. In May, 1920, Templeton em-
ployed one H. B. Hench to assist him in the matter of sales, at a
salary of $8,000 per annum with a bonus, and, in July, he employed
one L. E. Allen to assist him as manager of the plant at a salary of
$10,000 per annum. Thereupon Templeton voluntarily reduced his
salary from $30,000 to $20,000, the reduction being in the amount
paid to his assistant during the remainder of the year 1920.

During the year 1918 certain models of jacks theretofore manu-
factured by the petitioner and a certain quantity of parts on hand
became obsolete and their manufacture and sale was discontinued
due to the inauguration of a policy to manufacture and offer for sale
only new and improved designs. In addition a large amount of
parts on hand at the close of the war in November, 1918, which had
been made for use in the manufacture of jacks designed exclusively
for war purposes, could no longer be used and such parts were of
no value. In 1918 the company discontinued manufacturing and
offering for sale certain designs of jacks which had been superseded
by improved and more efficient models, and, in November, the manu-

facture of all models for war purposes was discontinued. In the latter part of November, or in the early part of December, 1918, Templeton, who was in charge of all of petitioner's activities, definitely abandoned and discarded all jack parts on hand designed for use in connection with old and superseded models and war models and gave instructions that this obsolete material be removed from the inventory and scrapped. These parts were not physically removed from the plant and junked until the taking of the closing inventory between December 25, 1918, and the early days of January, 1919. The books of the company were held open and were not closed until some time in 1919. The treasurer and the bookkeeper of the company took the 1918 closing inventory and for the purpose of accurately arriving at the amount thereof inventoried the obsolete and discarded parts at cost (about which there is no question) separately, along with other material, and the total figure shown was $90,265.28. In this figure there was erroneously included an item of small tools at $2,000. This item was carried as an asset upon the books at a fixed charge of $8,500. After the inventory had thus been listed and before the books were closed and the income-tax return prepared, the obsolete and discarded jack parts and the items of small tools were eliminated from the closing inventory. These items were as follows:

| | |
|---|---:|
| Model No. 1 | $11,017.85 |
| No. 6 | 3,578.73 |
| No. 15 | 657.47 |
| No. 31 | 280.57 |
| No. 44 | 1,100.54 |
| No. 47 | 9,684.05 |
| No. 50 | 2,558.94 |
| No. 51 | 1,072.25 |
| No. 62 | 2,501.49 |
| No. 312 | 712.30 |
| No. 315 | 3,511.30 |
| No. 318 | 2,297.90 |
| Small tools | 2,000.00 |
| Totaling | 40,973.39 |

These jack parts could not be utilized in the manufacture of new and improved designs.

In its return for 1918 petitioner claimed its closing inventory to be $49,291.89. By the end of 1918 petitioner had received a few orders for certain of the old style jacks and parts, principally from railroads, and during the year 1919, although the superseded models were not being regularly manufactured or offered for sale, petitioner received intermittent orders, without solicitation, for certain of the

old model jacks and parts. In order to fill these orders petitioner retrieved certain of the scrapped material as follows:

| 1919. | No. 1. | No. 6. | No. 50. | No. 51. |
|---|---|---|---|---|
| January | $4,770.48 | $524.16 | $179.76 | $154.00 |
| February | 686.40 | 221.76 | 398.04 | 180.40 |
| March | 577.72 | 315.84 | 98.44 | 294.80 |
| April | 240.24 | 376.32 | 21.40 | 39.60 |
| May | 97.24 | 208.32 | 47.08 | 47.08 |
| June | 223.08 | 40.32 | 34.24 | 8.80 |
| July | 955.24 | 107.52 | | 79.20 |
| August | 411.80 | 517.44 | | 26.40 |
| September | | | | 8.80 |
| October | | | | 8.80 |
| November | | | | |
| December | | | | |
| Total | 7,962.20 | 2,311.68 | 778.96 | 847.88 |
| | $11,900.72 | | | |

The obsolete and discarded material above tabulated was physically thrown out in a junk pile early in 1919.

The parties, in the stipulation filed prior to the hearing, agreed that the 1918 closing inventory was either $61,192.61 as contended by petitioner, made up of $90,265.28, less obsolete parts amounting to $38,973.39 and the small tools item amounting to $2,000, plus the retrieved material amounting to $11,900.72, or $90,265.28, which the Commissioner, while not questioning the figures or the fact that the jack parts listed could be used only in connection with jacks no longer manufactured, claims was the correct closing inventory.

OPINION.

LITTLETON: Little need be said in discussing the matter of compensation paid by petitioner to its president for 1918 and 1919. Templeton testified in detail concerning the business of the corporation and the duties performed by him during the taxable years. As was said by the Board in the *Appeal of Woodcliff Silk Mills*, 1 B. T. A. 715—

The amount of compensation which a corporation shall pay its officers for their personal service is, in the first instance, a matter within the judgment and discretion of its board of directors, and the only limitation upon the deduction of such amount for income tax purposes is that the amount must be reasonable.

Measured by the results accomplished, both from the standpoint of volume of business transacted and profits arising to the corporation therefrom and the nature of the services rendered by the president, the Board is of the opinion that the amounts paid to Templeton as compensation were not unreasonable or excessive and should be allowed as a deduction.

We think the Commissioner erred in determining that petitioner's 1918 closing inventory was $90,265.28. Jack parts amounting to $38,973.39 became obsolete, their use was abandoned, and they were discarded in November or December, 1918. The president of the corporation, who was in complete charge of every activity, gave directions and instructions in November or December, 1918, that certain models of jacks hereinbefore mentioned were to be no longer manufactured or offered for sale, that only the new and improved jacks should thereafter be manufactured and offered for sale, and these instructions were carried out. He also abandoned the use of and discarded all parts for the manufacture of jacks for war purposes. The obsolete and discarded parts were not physically thrown out of the plant into the junk pile until the taking of the inventory had been completed, which was early in 1919. This was probably due to the fact that, upon cessation of war in November, 1918, the nature of the company's output changed completely and every effort was being made by everyone to secure and fill commercial orders for new jacks to the end that the company should not suffer by reason of the cancellation of its war contracts. But we think from the evidence in this proceeding that the matter of actually casting the obsolete and discarded parts into the scrap heap should have no bearing upon the value of the closing inventory. The throwing out of such material is merely evidentiary of its obsoleteness and abandonment. Without that act having been performed we are satisfied that the jack parts manufactured were obsolete and that the petitioner abandoned their use and discarded them in the year 1918. They were, therefore, properly excluded from the closing inventory. The listing and valuation thereof at the time of taking the closing inventory was merely for the purpose of accurately arriving at the correct inventory and for the purpose of having a correct account of the junked material to be entered upon the books. The item of tools was carried in the asset account at a fixed amount of $8,500 and the item of $2,000 for tools should not therefore be included in the inventory.

The 50 per cent fraud penalty for each of the years appears to have been imposed by the Commissioner because of his conclusion that petitioner willfully understated its closing inventory of 1918 and that it unjustifiably claimed certain improper deductions in both 1918 and 1919. In view of the evidence before the Board, we are of the opinion that the Commissioner was in error in this regard and that the returns were not willfully false and fraudulent with intent to evade the tax.

We have approved the petitioner's determination of its closing inventory and have found that the salaries paid to its president

were not unreasonable. The other matters, which have been disposed of by stipulation, relating to the deduction for amortization of war facilities, depreciation, expenses, and worthless debts, appear unimportant from the standpoint of fraud. They were not seriously urged before the Board in support of the imposition of the penalty in either year. In view of the evidence, the Board is of the opinion that no penalty should be imposed for either the year 1918 or 1919.

*Judgment will be entered on 15 days' notice, under Rule 50.*